# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**April 10, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**SAMUEL J. COX,**
**Claimant Below, Petitioner**

**vs.) No. 22-ICA-230**     (JCN: 2019016979)

**RALEIGH COUNTY BOARD OF EDUCATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Samuel J. Cox appeals the October 11, 2022, order of the Workers' Compensation Board of Review ("Board"). Respondent Raleigh County Board of Education ("RCBOE") filed a timely response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's May 13, 2021, order that granted Mr. Cox no permanent partial disability ("PPD") award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Samuel J. Cox, a crew leader and welder for RCBOE, was injured on January 11, 2019, when he stepped out of a work truck, turned, and had immediate pain in his right knee. He was evaluated at Doctor's Immedicare and submitted a WC-1 form dated February 6, 2019, which described an occupational injury in the form of a strain/sprain of the right knee that did not aggravate a prior injury/disease. An x-ray of his knee taken February 6, 2019, showed no acute fracture or dislocation, but there was a mild narrowing of the medial compartment of the knee joint, after a prior ACL repair. A fragmented anterior tibial tuberosity and loose joint bodies were also noted. The assessment was knee joint pain and sprain of knee and Mr. Cox was referred to orthopedist Prakash R. Puranik, M.D.

---

[1] Petitioner is represented by Reginald D. Henry, Esq. and Lori J. Withrow, Esq. Respondent is represented by Jeffrey M. Carder, Esq.

1

Dr. Puranik had a previous relationship with Mr. Cox, as he had performed the ACL repair on Mr. Cox's right knee in 2007. Dr. Puranik later noted that although Mr. Cox had surgery on that knee in 2007, "after that he was doing perfectly fine … Though his MRI did show some arthritis again he never complained of any pain in that knee prior to this injury since his surgery in 2007." Dr. Puranik initially gave Mr. Cox an injection in his knee in March 2019 and ordered an MRI after observing that Mr. Cox had full range of motion in his knee, his cruciate ligaments were intact, and there was no effusion. Approximately sixty days later, Dr. Puranik's records dated May 13, 2019, noted that Mr. Cox continued to complain that his knee was locking with certain movements, and Dr. Puranik recommended an arthroscopy to investigate a possible loose body in the knee. About another month later, Dr. Puranik's notes dated June 19, 2019, show that Mr. Cox's symptoms continued with significant pain in his knee. By that time, Mr. Cox's workers' compensation claim had been denied, but Dr. Puranik was not sure why, and he continued to diagnose a loose body and/or meniscal tear in the right knee unrelated to the prior surgery of 2007. Mr. Cox protested the denial and his claim was eventually held compensable for right knee sprain and loose body and/or meniscus tear by order of the Workers' Compensation Office of Judges dated June 12, 2020.

On April 26, 2021, Joseph E. Grady, II, M.D., performed an independent medical evaluation ("IME") of Mr. Cox for a disability rating. Dr. Grady noted that he reviewed records from Dr. Puranik, as well as other physicians who had evaluated Mr. Cox, Dr. Zahir, Dr. Kropac, and Dr. Tabit, all of whom had recorded range of motion evaluations. Dr. Grady also physically examined Mr. Cox and found that his range of motion was the same in both of his knees at 130 degrees, with no crepitus, instability, laxity, or joint effusion in either knee. Therefore, he found no ratable criteria in the knee from the 2019 injury, and no need to apportion for the preexisting arthritis in the knee and no need to make any adjustments under Rule 20. Accordingly, Dr. Grady found a 0% whole person impairment for Mr. Cox. On that basis, the claim administrator notified Mr. Cox on May 13, 2021, that his PPD award was 0%. Mr. Cox protested.

On August 25, 2021, Mr. Cox was seen for an IME by chiropractor Michael Kominsky, D.C., who found only 109 degrees of flexion in the right knee, noting that Mr. Cox had progressive loss of range of motion since his 2019 injury. Dr. Kominsky found that this limitation qualified Mr. Cox for a mild category of 4% whole person impairment for loss of flexion and a mild laxity of the ACL for another 3% whole person impairment, for a combined 7% whole person impairment, which he believed was solely attributable to the January 11, 2019, injury. Dr. Kominsky did not apportion the impairment because he believed the previous ACL repair in 2007 had good results and there was no ongoing symptomatology, per Dr. Puranik's notes.

On October 15, 2021, occupational medicine specialist Robert Walker, M.D., performed another IME on Mr. Cox. Dr. Walker noted that Mr. Cox reported chronic pain and stiffness in his right knee. Dr. Walker observed only 100 degrees of flexion in that

knee, and extension of fourteen degrees less than neutral. Dr. Walker opined that a flexion contracture of fourteen degrees placed Mr. Cox in the "moderate" category of Table 41 of the AMA *Guides to the Evaluation of Permanent Impairment*, (4th ed. 1993) ("*Guides*"), assigning a 20% lower extremity impairment. Dr. Walker also found a 3.5 cm greater thigh circumference on the right thigh, which corresponded to a 10% lower extremity impairment for atrophy, using Table 37 of the *Guides*. Combining those values, he found a 28% lower extremity impairment, which converted to an 11% whole person impairment. Dr. Walker apportioned 3% of that impairment to preexisting impairment, as his May 5, 2019, MRI showed both recent and chronic changes. His evaluation resulted in 8% whole person impairment for the January 11, 2019, work injury.

On February 1, 2022, physiatrist Prasadarao B. Mukkamala, M.D., performed an IME on behalf of the employer. Dr. Mukkamala reviewed the IME reports of the previous providers and opined that Dr. Kominsky and Dr. Walker used incorrect methods in reaching their results, which he said lacked credibility. Dr. Mukkamala, like Dr. Grady, found no permanent impairment and no ratable condition in Mr. Cox's right knee as his range of motion was normal with full extension and 120 degrees flexion upon examination. Dr. Mukkamala also noted that Dr. Kropac found a full range of motion on July 30, 2020, as did Dr. Zahir on January 19, 2020, and Dr. Tabit on February 3, 2021. Dr. Mukkamala found Dr. Kominsky's finding of laxity in Mr. Cox's ACL to be unreliable as no other clinician documented such a finding. He further found that Dr. Walker's atrophy findings were not reliable because Mr. Cox had very significant varicose veins in the lower extremities that caused edema which varied from day to day, making any circumference measurements unreliable. Dr. Mukkamala found no atrophy when he examined Mr. Cox on February 1, 2022. He also disagreed with Dr. Walker's calculations because Dr. Walker combined the impairments for limitation of range of motion with the impairments of the atrophy. Ultimately, Dr. Mukkamala concluded that Mr. Cox had no permanent impairment resulting from the compensable work injury.

By order dated October 11, 2022, the Board affirmed the claim administrator's May 13, 2021, order that granted Mr. Cox no PPD award, finding that the evidence established that Mr. Cox had no permanent impairment as a result of his compensable injury. The Board reviewed the reports from the IMEs conducted by Dr. Grady, Dr. Kominsky, Dr. Walker, and Dr. Mukkamala. It found that the reports of Dr. Kominsky and Dr. Walker were unreliable because both doctors combined impermissible lower extremity impairments in contravention of the instructions provided by the *Guides*. Specifically, the Board cited to an advisement in the *Guides* on page 3/78, that if an impairment is estimated based on range of motion, it should not be combined with impairment from atrophy, as noted by Dr. Mukkamala. The Board also pointed to page 3/75 of the *Guides*, which states that between range of motion and diagnostic categories, only one method should be used in general. As these reports were deemed unreliable, the Board found that the evidence indicated that Mr. Cox had no greater whole person impairment than what was granted, and affirmed the claim administrator's order. It is from that order that Mr. Cox now appeals.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-12a(b) (2022), as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
>
> (3) Made upon unlawful procedures;
>
> (4) Affected by other error of law;
>
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, __ W. Va. __, __, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Mr. Cox argues that the Board incorrectly determined that both Dr. Kominsky's and Dr. Walker's reports were flawed because they combined impairment based on range of motion and atrophy, citing the *Guides* page 3/75 which states that between range of motion and diagnostic categories, only one method should be used "in general." Mr. Cox asserts that this presents two errors – first, Dr. Mukkamala's report only states that Dr. Walker incorrectly combined the range of motion and atrophy impairments. According to Mr. Cox, Dr. Mukkamala did not criticize Dr. Kominsky for calculating his rating in this manner, so the Board's reasoning is facially wrong. Dr. Kominsky did not combine range of motion and atrophy impairments. Dr. Mukkamala disagreed with Dr. Kominsky's clinical findings of flexion limitations and laxity, on the basis that other clinicians found these values to be within normal limits. Therefore, Mr. Cox asserts that this reasoning by the Board for disregarding a report should only apply to Dr. Walker's report, leaving no reason to disregard Dr. Kominsky's report. Second, Mr. Cox asserts that the use of the qualifier "in general" on page 3/75 of the *Guides* signals that there is no absolute prohibition against combining those two values as Dr. Walker did. Mr. Cox alleges that the *Guides* also permit an examiner to increase the impairment percentage if the examiner determines that the estimate does not sufficiently reflect the severity of the patient's condition, as long as the examiner explains the reason for the increase in writing. Mr. Cox claims that both Dr. Kominsky and Dr. Walker discussed the severity of his physical limitations and the effect on his daily activities, including limitations in his ability to do housework, walk, drive, bathe, and squat. He further argues that Dr. Kominsky clearly

stated that his range of motion and laxity impairments were due to the less than optimal treatment he has received, and that should be sufficient to justify combining figures to more accurately reflect his total impairment.

Finally, Mr. Cox argues that the Board disregarded the Supreme Court of Appeals of West Virginia's holding in *Moore v. ICG Tygart Valley, LLC*, that "[a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. . . ." Syl. Pt. 5, in part, *Moore v. ICG Tygart Valley*, *LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022).

Upon review, we disagree and find no error in the Board's reasoning or conclusions. The Board noted that it weighed all reliable, probative, and substantial evidence and considered it in determining Mr. Cox's PPD award but that in doing so, it was not required to accept the opinion of any particular expert. The Board concluded that Dr. Walker's and Dr. Kominsky's reports were unreliable on the basis that both clinicians combined lower extremity impairments in contravention of the *Guides*. The evidence of record shows that Dr. Walker combined atrophy with range of motion, while Dr. Kominsky combined laxity with range of motion, both of which constituted a disfavored combination of range of motion with a diagnostic category of impairment. As such, the Board did not include the opinions of Dr. Walker and Dr. Kominsky in its consideration of Mr. Cox's PPD award, and confirmed that the remaining evidence indicated that his whole person impairment was accurately assessed at 0%. Mr. Cox's argument that the Board disregarded the holding in *Moore* is inapplicable, as that analysis had no impact on the Board's consideration of his PPD award. Therefore, the Board's finding that Mr. Cox had no permanent impairment as a result of his compensable injury was not in error.

Accordingly, we affirm the Board's October 11, 2022, order.

Affirmed.

**ISSUED:** April 10, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

5